**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

————————————————

No. 23-10739

————————————————

ANDREW JOSEPH, JR.,
  as natural father, next friend and personal
  representative of the Estate of Andrew Joseph,
  III deceased,

                                                    *Plaintiff-Appellant*
                                                    *Cross Appellee,*

*versus*

HILLSBOROUGH COUNTY SHERIFF,
  In their official capacity,

                                                    *Defendant-Appellee*
                                                    *Cross Appellant,*

HENRY ECHENIQUE,
  in his individual capacity,
MARK CLARK,
  in his individual capacity,
STEPHEN JONES,
  in his individual capacity,

2                    Opinion of the Court                    23-10739

*Defendants-Appellees,*

JOHN DOES 1-X,

    individually and as deputies or employees of
    the Hillsborough County Sheriff's Department,
et al.,

*Defendants.*

————————————

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 8:16-cv-00274-MSS-CPT

————————————

————————————

No. 23-10813

————————————

ANDREW JOSEPH, JR.,

    as natural father, next friend and personal representative
    of the Estate of Andrew Joseph, III deceased,

*Plaintiff-Appellant,*

*versus*

HILLSBOROUGH COUNTY SHERIFF,

    in their official capacity,

*Defendant-Appellee*
*Cross Appellant,*

JOHN DOES 1-X,

    individually and as deputies or employees of
    the Hillsborough County Sheriff's Office, et al.,

*Defendants.*

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 8:16-cv-00274-MSS-CPT
_____

Before ROSENBAUM, ABUDU, and TJOFLAT, Circuit Judges.

ABUDU, Circuit Judge:

Plaintiff Andrew Joseph, Jr., as natural father, next friend, and personal representative of the estate of Andrew Joseph, III, filed a lawsuit alleging violations of the Fourth Amendment and Florida's wrongful death statute against Deputy Mark Clark in his individual capacity and the Sheriff of Hillsborough County Chad Chronister ("Sheriff's Office" or "HCSO") in his official capacity (collectively, the "Defendants"), related to his son's death. At trial, the jury returned a verdict in Plaintiff's favor on his wrongful death claim but found against him on the Fourth Amendment claim. Plaintiff filed both a renewed motion for judgment as a matter of law and a motion for a new trial on the Fourth Amendment claim. The district court denied both motions, and Plaintiff appeals those decisions.

Defendant Sheriff Chronister has filed a cross-appeal, challenging the court's previous denial of his entitlement to sovereign immunity. He also challenges a jury instruction and an evidentiary ruling from trial. After careful review of the record, and with the benefit of oral argument, we affirm the district court on both appeals.

## I.    FACTUAL BACKGROUND

Andrew Joseph, III, who was fourteen at the time of his death, attended Student Day at the Florida State Fair (the "Fair") on February 7, 2014.  Student Day was a well-attended annual event where many middle and high school students visited the Fair without a chaperone.  Consistent with that trend, the mother of one of Andrew's friends dropped him and four other boys off at the Main Gate of the Fair.  She told the boys she would pick them up at that same gate when it was time to go home.

Many teenagers congregated in an area of the Fair known as the "Midway."  Multiple witnesses testified that large, chaotic crowds occupied that area throughout the night of February 7.  Officer Scott Bell described the Midway as becoming more crowded as night fell, noting an increase in unaccompanied minors.  He explained that as the night progressed, he received various reports about fights and disturbances at the Fair, including individuals running through the Midway.  Andrew's friend and classmate, J.P., similarly recalled that numerous fights broke out on the night of February 7 and that officers removed several minors from the fairgrounds to keep the peace.

At one point, a disturbance occurred on the Midway that involved several teenage boys but not Andrew.  HCSO officers handcuffed the boys involved in the disturbance and escorted them to another location, including one of Andrew's friends, R.P.  As the officers were escorting R.P., his baseball cap fell on the ground.  Andrew retrieved the fallen cap and approached the arresting officers

to return it and ask what was happening.  C.T., a friend who remained with Andrew throughout that night, testified that Andrew was walking when he approached the officers.  However, Andrew's other friend, J.P., testified that Andrew ran toward the commotion when he saw the cap fall.

Two officers then arrested Andrew and C.T. for reportedly running across the Midway and for engaging in disorderly conduct. There are conflicting recollections of the boys' respective arrests. Defendant Clark supposedly escorted Andrew from the Midway to a designated onsite processing area, though he testified as to not having any recollection of arresting Andrew.  At approximately the same time, Bell escorted C.T. from the Midway to the same processing area.  While Bell did not remember Andrew, he testified that he detained C.T. for running among a chaotic crowd of thirty to forty individuals.  C.T., however, remembered that he and Andrew were arrested at the same time.

At the processing center, Defendant Clark assisted Deputy Henry Echenique in documenting Andrew's detention.  Echenique proceeded to photograph Andrew, review his background for any criminal history, and completed an "ejection form" which HCSO officers had to complete before removing a minor from the Fair. Echenique testified that, because he was not present for Andrew's arrest, he merely documented Clark's account of what had happened on the form.  Specifically, he wrote that Andrew was detained for "running through the Midway," and "causing disorderly conduct."

6                    Opinion of the Court                    23-10739

After Echenique processed Andrew, an HCSO van, driven by Deputy Stephen Jones, transported Andrew from the processing area to the outside of the Fair beyond Gate 4, a gate that was inaccessible from the Main Gate where the boys were supposed to be picked up. In the 44 minutes that Andrew remained in HCSO custody before officers removed him from the Fair, no officers contacted Andrew's parents or any other adult. Neither Andrew nor the other boys in the van were released to an adult.

After exiting the van, Andrew and his friends walked to Gate 4, the gate nearest to the location where they were ejected, and stayed there for some time. The boys then tried to return to the Main Gate where they were supposed to be picked up at the end of the night. C.T. testified that an unidentified officer did not allow the boys to walk through the Fair to reach the gate. The officer reportedly explained that he could not take the boys to the Main Gate because they were considered trespassers whom he had the authority to arrest. He further explained that the only obstacle between the boys and the Main Gate was the interstate.[1]

The boys, still trying to reach the Main Gate to get their ride home, ran across the interstate. Tragically, Andrew was struck by an oncoming vehicle. The Hillsborough County Fire Department pronounced him dead at the scene.

---

[1] At trial, Defendants objected to C.T.'s testimony as inadmissible hearsay and unfairly prejudicial.

## II.    PROCEDURAL HISTORY

Plaintiff's operative third amended complaint alleged that the Sheriff's Office negligently caused Andrew's death and that Mark Clark violated Andrew's Fourth Amendment right to be free from unreasonable seizures.[2]    Defendants moved for summary judgment on all of Plaintiff's claims.  The Sheriff's Office argued that it was entitled to sovereign immunity because Plaintiff challenged discretionary, planning level decisions of law enforcement, which cannot be challenged through tort law.  Officer Clark argued that he had "reasonable suspicion" to stop Andrew for disorderly conduct.  He explained that under the totality of the circumstances, any reasonable officer would have perceived a child running toward a confrontation between his friends and officers as disorderly conduct.

The district court denied Defendants' motion.[3]  As to sovereign immunity, the court ruled that Plaintiff was not challenging the existence of the HCSO's removal policy, but was alleging the department's actions in implementing the policy, as to Andrew, were negligent.  It explained that once law enforcement authorities

_____

[2] While Plaintiff's third amended complaint includes additional claims against additional entities, for the purposes of our review, we are focusing on the wrongful death claim against the Sheriff's Office and the Fourth Amendment claim against Officer Clark.

[3] Sheriff Chronister filed an interlocutory appeal, in relevant part, to challenge the district court's ruling that he was not entitled to sovereign immunity.  This Court affirmed that he was not. _Joseph as next friend of Est. of Joseph v. Chronister_, No. 20-11073, 2021 WL 4739608, at *5 (11th Cir. Oct. 12, 2021).

adopted a policy of "arresting and ejecting children from the Fair, they had an operational duty not to do so negligently." Thus, the district court denied Defendants sovereign immunity on the ground that the complaint's allegations rested on Defendants' operational decisions, which were not entitled to sovereign immunity.

For his part, Officer Clark maintained that he had no recollection of interacting with Andrew, but there was sworn testimony from others attesting that Clark played a role in the arrest. The court ruled that, if Plaintiff's version of events was true, Clark would not have had arguable probable cause for the arrest. Therefore, it denied his request for summary judgment as well.

The claims against Defendants then proceeded to trial. At the close of Defendants' case-in-chief, Plaintiff moved for judgment as a matter of law on his Fourth Amendment claim against Clark, arguing that there was no evidence that Clark had probable cause to arrest Andrew. The trial court declined to rule on Plaintiff's motion until the jury returned a verdict.

Prior to its deliberations, the court instructed the jury that HCSO's officers were required by law to notify Andrew's parents when they took him into custody and to release Andrew to a legal guardian or responsible adult. Notably, the court conclusively stated that HCSO violated both requirements and that those violations could be considered evidence of negligence. Defendants objected to the instruction, arguing that the relevant state laws did not apply under the circumstances and therefore had not been violated, but the court overruled that objection.

The jury returned a verdict in Clark's favor on Plaintiff's Fourth Amendment unlawful arrest claim, and in Plaintiff's favor on the wrongful death claim. Plaintiff renewed his motion for judgment as a matter of law and moved for a new trial on the Fourth Amendment claim. The district court denied both motions. The parties then filed cross appeals relevant to the judgments against them.

## III.    STANDARDS OF REVIEW

Several standards of review govern this appeal. We review whether a defendant is entitled to sovereign immunity *de novo* as a question of law. *Tinney v. Shores*, 77 F.3d 378, 383 (11th Cir. 1996). We also review a district court's denial of a motion for judgment as a matter of law *de novo*, drawing all inferences in favor of the nonmovant. *Advanced Bodycare Sols, LLC v. Thione Int'l, Inc.*, 615 F.3d 1352, 1360 (11th Cir. 2010). In reviewing the record, we only grant judgment when the movant's evidence is so strong that a reasonable jury could not rule against him. *Redding v. Coloplast Corp.*, 104 F.4th 1302, 1308 (11th Cir. 2024). If reasonable jurors could reach different conclusions, we must not disturb the jury's verdict. *Brochu v. City of Rivera Beach*, 304 F.3d 1144, 1155 (11th Cir. 2002).

We review the district court's denial of a motion for new trial for an abuse of discretion. *Lambert v. Fulton County*, 253 F.3d 588, 595 (11th Cir. 2001). We also review the district court's evidentiary rulings for an abuse of discretion. *Walker v. NationsBank of Florida N.A.*, 53 F.3d 1548, 1554 (11th Cir. 1995). Finally, we re-

view *de novo* a challenge to a district court's jury instructions, evaluating whether the district court misinterpreted the law or misled the jury in a manner that prejudiced the objecting party. *United States v. Grigsby*, 111 F.3d 806, 814 (11th Cir. 1997).

## IV.    DISCUSSION

Our analysis continues in four parts, first addressing Sheriff Chronister's argument that his office is entitled to sovereign immunity for its quasi-legislative decisions. We then turn to Plaintiff's argument that no reasonable jury could review the evidence and conclude that Clark did not lack probable cause. Next, we consider the Sheriff's argument that C.T.'s testimony was inadmissible hearsay that was unfairly prejudicial. Lastly, we address the Sheriff's argument that it did not violate Florida laws related to child custody, and the district court erred in instructing the jury otherwise.

### a.  Sovereign Immunity

At summary judgment, the district court ruled that Defendant Chronister was not entitled to sovereign immunity, and this Court affirmed that decision. *Joseph as next friend of Est. of Joseph v. Chronister*, No. 20-11073, 2021 WL 4739608, at *5 (11th Cir. Oct. 12, 2021). After remand and a subsequent trial, Chronister again asserts that he is entitled to sovereign immunity. On appeal, we still conclude that the Sheriff's Office was not entitled to immunity.

Florida law waives sovereign immunity for state agencies as it relates to tort claims that could otherwise be brought against a private individual. *See* Fla. Stat. § 768.28; *Trianon Park Condo. Ass'n, Inc., v. City of Hialeah*, 468 So. 2d 912, 917 (Fla. 1985). The Florida

Supreme Court has ruled, however, that some discretionary government functions remain immune from liability. *Id.* at 918. Specifically, Florida differentiates between discretionary "planning" decisions and discretionary "operational" decisions. *Id.*

Planning decisions, such as choosing to enforce a criminal statute or make an arrest, are discretionary in their nature. *Id.* at 919-20. These decisions enjoy sovereign immunity from tort liability because they are "quasi-legislative." *Kaisner v. Kolb*, 543 So. 2d 732, 737 (Fla. 1989). Florida courts have held that planning decisions are policy determinations undertaken by a state agency, and an infringement of those policies through tort law would undercut the decision-making authority of the respective branches of government. *Henderson v. Bowen*, 737 So. 2d 532, 538 (Fla. 1999).

Conversely, operational decisions, such as how police officers carry out a traffic stop or arrest, do not enjoy immunity because they relate to the common law duty of care rooted in traditional tort principles. *See Kaisner,* 543 So. 2d at 737-38; *see also id.* at 538. Section 768.28 therefore allowed individuals to pursue the "identical existing duties for private persons" but against government entities. *Trianon Park Condo. Ass'n*, 468 So. 2d at 917.

So, the question is whether the actions of HCSO officers, specifically their failure to notify Andrew's parents that he was in their custody and to release him to an adult, qualify as planning or operational decisions. We conclude that HCSO officers exercised operational discretion and were not entitled to sovereign immunity.

Although HCSO's policy of removing disorderly children was entitled to sovereign immunity, *id.* at 919 (collecting cases), Jones owed Andrew a duty of reasonable care in executing that policy. *id.* at 920 ("[T]here always has been a common law duty of care and the waiver of sovereign immunity now allows actions against all governmental entities for violations of those duties of care."). Officers violate Florida law when they fail to notify an adult when a child has been taken into custody or fail to release that child into the custody of a trusted adult. *See* Fla. Sta. §§ 985.101(1),(3); *see also* Fla. Sta. § 985.115(2)(a). So here, liability arises, not from HCSO's removal policy but from the officers' failure to act with reasonable care in implementing the policy.

HCSO argues that if both parental notification and release were required by statute, then such practices were a matter of "training," making them planning decisions that were entitled to sovereign immunity. This argument fails because Plaintiff sought relief, at least in part, for HCSO's failure to use ordinary care in detaining and releasing Andrew, which resulted in his wrongful death. Ultimately then, Plaintiff's claims relate to the operational decisions of HCSO Officers that were contrary to the duty of care they owed Andrew.

### b. Plaintiff's Fourth Amendment Claim

The jury found that, based on the evidence presented, Defendant Clark had probable cause to arrest Andrew. The evidence showed that Officer Clark arrested Andrew for his disorderly conduct on the Midway, specifically running amid substantial crowds

as officers attempted to escort detained individuals to another location.

The plaintiff bears the burden of proving his Fourth Amendment claim. *Rankins v. Evans*, 133 F.3d 1425, 1436 (11th Cir. 1998). To succeed, he must prove that an officer lacked probable cause to execute the challenged arrest. *Brooks v. Miller*, 78 F.4th 1267, 1281 (11th Cir. 2023). An officer has probable cause for a lawful arrest when the facts viewed from the perspective of a reasonable officer show a "probability or substantial chance" that an individual has engaged in criminal activity. *Washington v. Howard*, 25 F.4th 891, 898-99 (11th Cir. 2022) (quoting *District of Columbia v. Wesby*, 583 U.S. 48, 57 (2018)). Accordingly, whether an officer had probable cause "naturally depends on the elements of the alleged crime." *Skop v. City of Atlanta*, 485 F.3d 1130, 1137 (11th Cir. 2007).

According to Clark, Andrew engaged in the crime of trespassing as defined under Fla. Stat. § 616.185. The statute reads:

> (1) For the purposes of this chapter, trespass upon the grounds of the Florida State Fair Authority or any other fair association permitted under § 616.15 means:
>
> (a) Entering and remaining upon any grounds or facilities owned, operated, or controlled by the Florida State Fair Authority or any other association permitted under § 616.15 and committing any act that *disrupts the orderly conduct* of any authorized activity of

the fair association in charge, or its lessees, licensees, or the general public on those grounds or facilities[.]

Fla. Stat. § 616.185 (1)(a) (emphasis added).

Here, the jury's conclusion that Officer Clark had probable cause to arrest Andrew for disorderly conduct is supported by evidence admitted at trial. For example, J.P. testified that she saw a commotion on the Midway and officers arrested two boys in the aftermath. She explained that Andrew was not a part of the initial commotion, but he and his friends ran after the deputies. Further, Bell testified that he arrested C.T. for running in a crowd of individuals. Notably, C.T. also testified that he and Andrew were arrested at the same time, indicating that Andrew was a part of the crowd running on the Midway.

Andrew's ejection form was consistent with J.P. and Bell's testimony. It documented that Andrew had been arrested for "running on the midway, [and] causing disorderly conduct." The jury could reasonably rely on that form because Deputy Echenique testified that he documented the account of the arresting officer, Officer Clark.

Accordingly, a reasonable jury could rely on evidence from the trial to conclude that Officer Clark had probable cause to arrest Andrew. Therefore, the district court did not err when it denied Plaintiff's motion for judgment as a matter of law nor did it abuse its discretion when it denied Plaintiff's motion for a new trial.

### c. Admissibility of C.T.'s Testimony

At trial, C.T. testified that an officer threatened to arrest him and Andrew, prohibited them from entering the Fair so they could get to the Main Gate and be picked up, and then suggested that the boys could cross the interstate to reach their gate. The Sheriff's Office argues C.T's testimony was inadmissible hearsay which was unfairly prejudicial. We reject that argument as well.

Hearsay is an out-of-court statement "offered in evidence to prove the truth of the matter asserted." *United States v. Rivera*, 780 F.3d 1084, 1092 (11th Cir. 2015) (citing FED. R. EVID. 801(c)). "Generally, an out-of-court statement admitted to show its effect on the hearer is not hearsay" because "[s]uch verbal acts are not in the first instance assertive statements and not offered to prove the truth of the matter asserted." *Id.* (quoting *United States v. Cruz*, 805 F.2d 1464, 1478 (11th Cir. 1986)).

Here, Plaintiff introduced C.T.'s testimony to show the effect that the officer's statements had on C.T. and Andrew, thus causing them to use the only route available as they tried to get back to the Fair to get a ride home. Specifically, the officer told C.T. and Andrew that they would be arrested if they tried to re-enter the Fair and that the "only thing" separating them from their pick-up location was the interstate. Unlike hearsay, C.T.'s statements were not admitted for the truth of the matter asserted—whether Andrew and C.T. would have been arrested by the officer or whether the interstate was their only barrier to reaching the Main Gate. *See United States v. Harris*, 886 F.3d 1120, 1130 (11th Cir. 2018). Instead,

the statements were admitted to show Andrew and C.T.'s motivation to cross the interstate, or in other words, to evince the effect that the officer's words had on the boys. *Id.* Thus, the district court did not abuse its discretion in permitting C.T.'s testimony for its effect on the listener.

The district court also did not abuse its discretion in ruling that the probative value of C.T.'s testimony was not substantially outweighed by the risk of unfair prejudice. *See United States v. Lopez*, 649 F.3d 1222, 1247 (11th Cir. 2011) (quoting FED. R. EVID. 403) ("Rule 403 gives the district court discretion to exclude otherwise relevant evidence if 'its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.'"). C.T. testified that an unidentified officer told him and Andrew that the only barrier to their destination was the interstate, and ultimately evinced that the failure to release the boys to a responsible adult proximately caused Andrew's death. Defendants concede that this was the "only evidence" of proximate cause, making it highly probative to an essential element of the wrongful death claim. *See Aycock v. R.J. Reynolds Tobacco Co.*, 769 F.3d 1063, 1069 (11th Cir. 2014) ("As evidence becomes more essential, its probative value becomes greater.").

In the context of that highly probative value, we consider the risk of unfair prejudice. All evidence that is relevant is, to some extent, prejudicial to the adverse party. *See Sorrels v. NCL (Bahamas)*

*Ltd.*, 796 F.3d 1275, 1285 (11th Cir. 2015). However, Rule 403 only concerns *unfairly* prejudicial evidence that "substantially out-weigh[s]" the probative value. FED. R. EVID. 403. Chronister has not demonstrated that C.T.'s testimony could have led the jury to makes its decision on an "improper basis." *Aycock*, 769 F.3d at 1069. The only "unfairly prejudicial" impact he suggests stems from Plaintiff's inability to prove the declarant was an HSCO employee rather than a Fair security guard, but that distinction is not dispos-itive. Even if the declarant was a Fair security guard, the jury could have properly concluded that HCSO negligently failed to release Andrew to an adult, which proximately caused his death. *See McCain v. Fla. Power Corp.*, 593 So. 2d 500, 504 (Fla. 1992) (explaining that the factfinder decides whether plaintiff's injury was proxi-mately caused by defendant's negligent actions). Accordingly, C.T.'s testimony presented no risk that a jury would determine Chronister's liability on an improper basis.

### d. *The Jury Instruction*

The jury found the Sheriff's Office liable for Andrew's death. In its cross-appeal, the Sheriff's Office argues that the district court erred when it instructed the jury that the Defendant's statutory vi-olations could be used as evidence of negligence. It maintains that Sections 985.101 and 985.115 did not apply to Andrew's detention, and therefore, they owed him no legal duty of care. We disagree.

Whether a defendant owes a duty of care to an injured party is a legal question under Florida law, which may be determined by statute. *See Limones v. Sch. Dist. of Lee Cnty.*, 161 So. 3d 384, 389 (Fla.

18                    Opinion of the Court                    23-10739

2015). Section 985.101 imposes several duties of care when an officer takes a minor into custody. *Chronister*, 2021 WL 4739608, at *7 (11th Cir. Oct. 12, 2021) (Jordan, J., concurring). The statute permits an officer to take a minor into custody "for a delinquent act or violation of law." Fla. Sta. § 985.101(1)(b). When he does, the officer must attempt to notify a legal guardian of the child until he successfully contacts that guardian.[4] Fla. Sta. § 985.101(3). Similarly, officers must release the child in custody into the care of "the child's parent, guardian, or legal custodian" or at a bare minimum, "to any responsible adult." Fla. Sta. § 985.115(2)(a). So, when read together, the statutes require officers to notify the caretakers of a child taken into custody and to release that child into the custody of those caretakers or another "responsible adult." *Chronister*, 2021 WL 4739608, at *8 (Jordan, J., Concurring).

In Florida, a statutory violation may constitute *prima facie* evidence of negligence. *Fla. Dep't of Corrs. v. Abril*, 969 So. 2d 201, 205 (Fla. 2007). The record does not reflect that any HCSO officers attempted to notify any adult when they took Andrew into custody, nor did they release him into the custody of a responsible adult. Consequently, HCSO violated Sections 985.115(2)(a) and 985.101(3), which required them to do so. The violations were

---

[4] An officer may also stop attempting to contact a child's guardian if the child goes through intake at a local juvenile assessment center. Fla. Sta. § 985.101(3) (referencing intake under Fla. Stat. §§ 985.14, 985.145)). Defendants do not argue that they did not contact Andrew's guardian for this reason. Instead, they argue that they were not required to contact Andrew's guardian because Section 985.101(3) did not apply to his particular detention.

*prima facie* evidence that HCSO breached the standard of care, and the district court did not err in instructing the jury that it could consider the violation accordingly.

Even so, Defendants argue that the district court erred in failing to provide the jury with statutory language that established their violation. They principally rely on *United States v. Grigsby*. However, *Grigsby* is inapplicable to the present case. There, the district court erred in giving instructions that could have misled or confused the jury in its application of 16 U.S.C. § 4224(a), a wildlife conservation statute which defendants were accused of violating through their importation of certain products. *Id.* at 811, 821. The district court erroneously instructed the jury that an individual could violate that section either "knowingly" or "fraudulently," despite the statute not using the word "fraudulently." *Id.* at 821. By adding "fraud" to the jury's consideration, we reasoned, the lower court had given an erroneous statement about the elements necessary to find guilt which could have produced a wrongful conviction. *Id.* at 822.

Here, Florida law is clear that violating a statute can serve as evidence of negligence. The record supports a finding that none of the officers contacted an adult to pick up Andrew while he was in their custody. Therefore, they clearly violated the statute. Consequently, the district court did not err in its instruction to the jury. Unlike *Grigsby*, there was no risk that the jury would misapply the statute in reaching a final verdict. The jury's only role was to determine the weight it would place on the evidence of negligence.

### V.    CONCLUSION

For the reasons set forth above, we **AFFIRM** the district court's denial of judgment as a matter of law and motion for new trial.  We similarly **AFFIRM** the district court's challenged rulings related to jury instructions, Chronister's entitlement to sovereign immunity, and the admissibility of C.T.'s testimony.

**AFFIRMED.**